CONNECTICUT INDEMNITY COMPANY, Plaintiff,

v.

21ST CENTURY TRANSPORT CO., INC., Samuel Seymour, d/b/a Sam's Trucking, Clifton Messam, State Farm Mutual Automobile Insurance Company, Rampart Insurance Company, Ledian Williams, Legion Insurance Company, Rutigliano Paper Stock, Inc., Allied Waste Industries, Inc., Karen Carr, Gregory Vaz and John Haynes, Defendants.

No. 99 CV 7735(ILG).

United States District Court, E.D. New York.

Feb. 25, 2002.

---

Raymond D. McElfish, Esq., McElfish & Associates, LLC, New York.

Philip A. Nemecek, Esq., Rosenman & Colin LLP, New York.

### MEMORANDUM & ORDER

GLASSER, District Judge.

This action arises out of three motor vehicle accidents, each of which involved a passenger car and a tractor-trailer. Each of the tractors involved in the accidents was owned and operated by defendant 21st Century Transport Co., Inc. ("21st Century"), and two of the three trailers involved in the accidents were owned by defendant Rutigliano Paper Stock, Inc. ("Rutigli-

ano"). Connecticut Indemnity Company ("CI"), 21st Century's insurer, commenced this declaratory judgment action against a number of defendants, including Rutigliano's insurer, Rampart Insurance Company ("Rampart"),[1] seeking a declaratory judgment that CI is not obligated to indemnify any of the defendants as a result of the accidents.

Rampart now moves for summary judgment on each of the three claims in the complaint in which it is implicated. Those claims are:

> *Count I:* In this claim, CI seeks a declaration that Rampart is required to indemnify 21st Century and its drivers because, at the time of the accidents, the tractor-trailers were being used in Rutigliano's business, and therefore 21st Century and its drivers are "insureds" under Rampart's policy with Rutigliano.
> *Count IV:* In this claim, CI seeks a declaration that it is not required to indemnify 21st Century or its drivers as a result of the accidents, because the tractor-trailers involved in the accidents were being used in Rutigliano's business, and therefore fall within an exclusion in CI's policy with 21st Century.
> *Count V:* In this claim, which is pled in the alternative of CI's other claims, CI seeks a declaration that, in the event the Court determines that CI is obligated to indemnify 21st Century or its drivers, its exposure is limited to the mandatory minimums set by New York law, in accordance with a provision in its policy with 21st Century.

CI has cross-moved for summary judgment on these three claims. For the reasons set forth below, Rampart's summary judgment motion is granted in part and denied in part. CI's cross-motion also is granted in part and denied in part.

---

**1.** Rampart was previously known as GAN National Insurance Company. (*See* Def. Mem. at 3.)

## BACKGROUND

Three separate motor vehicle accidents are at the heart of CI's complaint, but only two of those accidents are relevant for present purposes. The first occurred on November 26, 1997, when a tractor-trailer driven by John Haynes—who was working for and operating a tractor owned by 21st Century which was attached to a trailer owned by Rutigliano—hit another vehicle in which defendants Ledian Williams and Karen Carr were passengers (the "Williams Accident"). The second accident occurred on February 20, 1998, when defendant Gregory Vaz—who also worked for and was driving a tractor owned by 21st Century which was attached to a trailer owned by Rutigliano—hit another vehicle driven by defendant Clifton Messam (the "Messam Accident"). Williams and Carr commenced a lawsuit in New York state court against 21st Century and Haynes as a result of the Williams Accident, and Messam commenced a lawsuit in New York state court against 21st Century and Vaz as a result of the Messam Accident.

21st Century and its drivers then looked to CI, 21st Century's insurer, to provide coverage for liability arising out of either of these lawsuits, since each accident occurred while a 21st Century employee was driving a 21st Century tractor. CI, however, claimed that it was not required to indemnify 21st Century, Haynes or Vaz under its insurance policy with 21st Century (the "CI Policy"). The CI Policy, also known as a Non–Trucking Automobile Liability ("NTAL") policy, includes a Non–Trucking Use Endorsement that states:

This insurance does not apply to:

a. A covered "auto" while used to carry any property in any business.

b. A covered "auto" while used in the business of anyone to whom the "auto" is rented.

(Def. Mem. at 9; *see also* Am. Compl. Ex. 1.) CI asserted that, in this case, the tractor-trailers involved in the Williams and Messam Accidents were being used in Rutigliano's business, *i.e.*, they were "under dispatch" to Rutigliano. Accordingly, CI claimed that it had no duty to indemnify 21st Century, Haynes or Vaz, due to the Non–Trucking Use Endorsement in the CI Policy. Instead, CI asserted that coverage should be provided by Rampart, Rutigliano's insurer, because the tractor-trailers were being used in Rutigliano's business at the time of the accidents, and therefore 21st Century, Haynes and Vaz qualified as "insureds" under Rampart's policy.

In light of these facts, CI commenced this action against 21st Century, Haynes, Vaz, Rutigliano and Rampart, among others. The three causes of action relevant to the present motions—Counts I, IV, and V of the Amended Complaint—are set out above. (*See supra* at 2.) In support of its Count V claim, CI relies upon an endorsement in the CI Policy (the "Limitation of Liability Endorsement") which reads:

We agree with YOU that if any of the provision of the endorsement, "Truckers Insurance for Non–Trucking Use" ... are held to be void or unenforceable under the law of any jurisdiction, ... WE will not pay any sums in excess of the minimum amounts required by the Financial Responsibility Laws of such jurisdiction, and then only after all valid and collectible insurance available ... has been exhausted.

(*See id.* ¶ 89.)

Rampart has moved for summary judgment on these three claims. With respect to Count IV,[2] Rampart raises two arguments. First, Rampart argues that, with

---

**2.** Because the claims are so closely related, the parties discuss Count I and Count IV together. Since it is easier to analyze Count

discovery now complete, CI has failed to adduce any evidence supporting CI's assertion that the tractor-trailers were "under dispatch" to Rutigliano. Accordingly, Rampart insists that CI must indemnify 21st Century, Haynes and Vaz, because the Non–Trucking Use Endorsement in the CI Policy applies only when tractor-trailers are "under dispatch" to a freight carrier and, in this case, they were not. (*See* Def. Mem. at 6–8.) Second, and in the alternative of Rampart's other argument, Rampart argues that it is entitled to summary judgment on Count IV even if the tractor-trailers were "under dispatch" to Rutigliano. Rampart asserts that the Non–Trucking Use Endorsement in the CI Policy is void because it violates New York public policy. If that exception is void, argues Rampart, then CI is obligated to indemnify 21st Century, Haynes and Vaz under the CI Policy. (*See id.* at 9–12.)

With respect to Count I—the claim that Rampart is required to indemnify 21st Century, Haynes and Vaz because each is an "insured" under Rampart's policy with Rutigliano—Rampart raises the following argument. Rampart first argues that CI cannot prove that the tractor-trailers were "under dispatch" to Rutigliano at the time of the accidents. Therefore, because the tractor-trailers allegedly were not "under dispatch" to Rutigliano, neither 21st Century, Haynes nor Vaz could be an "insured" under Rampart's insurance policy with Rutigliano. Accordingly, Rampart asserts that it cannot be required to indemnify 21st Century, Haynes or Vaz under that policy. (*See* Def. Mem. at 6–8.)[3]

Finally, with respect to Count V, Rampart argues that the Limitation of Liability Endorsement in the CI Policy, like the Non–Trucking Use Endorsement, is void because it violates New York public policy. (*See id.* at 13–14.) Accordingly, Rampart argues that, if the Court finds that CI is required to indemnify 21st Century, Haynes and Vaz, CI cannot limit its exposure under the Limitation of Liability Endorsement.

CI has cross-moved for summary judgment. In its cross-motion, CI argues that the Non–Trucking Use Endorsement is valid and enforceable, and also argues that there is no factual dispute concerning whether the tractor-trailers involved in the Williams and Messam Accidents were "under dispatch" to Rutigliano. Accordingly, CI asserts that it is entitled to summary judgment on Count IV, because the Non–Trucking Use Endorsement applies and relieves CI of any duty to indemnify 21st Century, Haynes or Vaz. (*See* Pl. Mem. at 4–9, 13–21.) Similarly, CI argues that it is entitled to summary judgment on Count I. According to CI, because the facts show that the tractor-trailers were "under dispatch" to Rutigliano, Rampart must indemnify 21st Century, Haynes and Vaz under the terms of its insurance policy with Rutigliano. (*See id.*) Finally, CI argues that summary judgment should be granted in its favor on Count V, because the Limitation of Liability Endorsement is valid. (*See id.* at 22–23.)

## DISCUSSION

### I. *Preliminary Considerations*

Before addressing the merits of the parties' contentions, it is first necessary to

---

IV before Count I, the Court discusses that claim first.

**3.** Rampart nowhere asserts any other reason why 21st Century, Haynes and Vaz are not "insureds" under its policy with Rutigliano. Accordingly, Rampart apparently has con-

ceded that if the tractor-trailers were "under dispatch" to Rutigliano at the time of the accidents, then it is required to indemnify 21st Century, Haynes and Vaz under its insurance policy with Rutigliano. (*See also infra* at 17–18 & n. 9.)

address a number of preliminary considerations.

## A. Choice of law

■ Where, as here, the parties to a lawsuit are citizens of several states, a choice of law question arises. Because the Court is sitting in diversity, it must apply the law of the forum state, including the forum state's choice of law rules. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir.2001). However, the parties rely on New York law in their submissions, and, given the connections New York has to this lawsuit,[4] there is no reason for the Court not to apply New York law. *See, e.g., Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 98 (2d Cir.2000) (court saw "no reason not to apply New York law" where "[t]he parties have clearly, if tacitly, agreed that New York law governs this litigation" and "in light of the plaintiff's residence in New York [and] the fact that the John Street property—the appraisal of which is at the heart of this suit—is located in New York"); *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 121 n. 5 (2d Cir.1998) ("Jurisdiction in this case is premised on diversity, and the parties both present arguments based on New York law, the law of the forum state. It is therefore appropriate for this Court to apply New York law."). Accordingly, the Court will apply New York law.

## B. Procedural issues with CI's cross-motion

In addition to its arguments concerning the merits of CI's cross-motion, Rampart argues that the cross-motion must be denied because (i) CI failed to file a Local Rule 56.1 statement (*see* Def. Reply Mem. at 10–11), and (ii) CI's cross-motion was not timely filed (*see id.* at 9–10). The Court rejects both of these arguments.

First, Rampart's argument that CI failed to file a Local Rule 56.1 statement is baseless. In fact, the courtesy copies of the parties' motion papers submitted to the Court *by Rampart* include a copy of CI's Local Rule 56.1 statement, which is annexed to the Affirmation of Raymond D. McElfish in Support of Plaintiff's Cross–Motion for Summary Judgment and in Opposition to Defendant Rampart's Motion for Summary Judgment. Accordingly, Rampart's argument must be rejected.

■ Rampart also argues that CI failed to comply with Magistrate Judge Chrein's scheduling order, which required all dispositive motions to be filed on or before July 31, 2001. Rampart appears to be correct—CI's motion was filed nearly ten weeks after the cut-off for dispositive motions in Magistrate Judge Chrein's order, and CI has failed to provide any explanation for its untimely filing. Nevertheless, the Court finds it appropriate to consider CI's cross-motion, for the simple reason that the cross-motion seeks summary judgment on the very same claims on which Rampart has moved for summary judgment.[5] It would be a strange result

---

**4.** For example, the insurance policies involved were issued to New York companies; many, if not most, of the defendants are New York citizens; the underlying car accidents occurred here; and the state court actions were commenced in this state.

**5.** CI seeks summary judgment on all claims alleged against Rampart in the Amended Complaint. (*See* Pl. Notice of Motion at 1.) CI argues that one such claim is the sixth

cause of action in the Amended Complaint. However, the sixth cause of action—which is pled in the alternative of CI's other claims—only seeks recovery from 21st Century, Rutigliano or defendant Samuel Seymour (who is not implicated in the current motions) in the event the Court finds that CI must provide coverage to 21st Century, Haynes and/or Vaz. Because this claim in no way involves Rampart, and because the Court will only consider CI's cross-motion to the extent it concerns

indeed if the Court only considered Rampart's motion, determined that there were no genuine factual issues in dispute but that the law favored CI (and not Rampart), and yet refused to grant summary judgment for CI, thereby forcing its claims to go to trial. *Cf. Hastie v. J.C. Penney Co., Inc.,* 886 F.Supp. 1017, 1030–31 (W.D.N.Y.1994) (court had authority to consider untimely filed summary judgment motion, so long as opposing party was aware that court might rule on the motion).

## II. *Standard for Summary Judgment*

Summary judgment "shall be rendered forthwith if the pleadings, depositions ... together with the affidavits ... show that there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A "moving party is entitled to judgment as a matter of law [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1985) (internal quotation marks and citations omitted). In deciding a summary judgment motion, a court need not resolve disputed issues of fact, but need only determine whether there is any genuine issue to be tried. *Eastman Mach. Co. v. United States,* 841 F.2d 469, 473 (2d Cir.1988). A disputed fact is material only if it might affect the outcome of the suit under the governing law. A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a reasonable jury could return a verdict in her favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In assessing the

record to determine whether there is a genuine issue of fact, the court is required to draw all inferences in favor of the party against whom summary judgment is sought." *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989).

## III. *Rampart is Entitled to Summary Judgment on Count IV*

As discussed above, Count IV seeks a declaration that CI has no duty to indemnify 21st Century, Haynes or Vaz, due to the Non–Trucking Use Endorsement in the CI Policy. Rampart argues that it is entitled to summary judgment on this claim, for two reasons. First, Rampart asserts that CI has failed to adduce any evidence supporting CI's assertion that the tractor-trailers were "under dispatch" to Rutigliano, and therefore the Non–Trucking Use Endorsement cannot apply. (*See* Def. Mem. at 6–8.) Second, Rampart argues that, in the alternative, the Non–Trucking Use Endorsement in the CI Policy is void because it violates New York public policy. In response, CI argues that the Non–Trucking Use Endorsement is valid and enforceable, and that there is no dispute that the tractor-trailers were "under dispatch" to Rutigliano at the time of the accidents, thereby relieving CI of any duty to indemnify. Because the Court finds that the Non–Trucking Use Endorsement is invalid under New York law, it is unnecessary for the Court to determine whether the tractor-trailers were "under dispatch" to Rutigliano before granting summary judgment in favor of Rampart on Count IV.

■ New York public policy requires victims of motor vehicle accidents to have "recourse to a financially responsibly defendant." *Morris v. Snappy Car Rental,*

---

claims addressed in Rampart's motion, the Court will not consider the cross-motion with respect to the sixth cause of action.

84 N.Y.2d 21, 29, 614 N.Y.S.2d 362, 365, 637 N.E.2d 253 (1994) (citation omitted). This public policy is the driving force behind New York Vehicle & Traffic Law Section 388, which requires "[a]ll ... policies of insurance issued to the owner of any vehicle" to "contain a provision for indemnity or security against the liability [for] death or injuries to person or property resulting from negligence in the use or operation of [a] vehicle ... by any person using or operating the same with the permission ... of [the] owner." N.Y. Veh. & Traf. L. § 388[1], [4].

■ The Non–Trucking Use Endorsement in the CI Policy fails to comply with this mandate. The CI Policy covers 21st Century's autos, but the Non–Trucking Use Endorsement excepts from coverage those autos rented to another company and used in the course of that company's business.[6] (*See* Am. Compl. Ex. 1 (CI Policy "does not apply" to "[a] covered 'auto' while used in the business of anyone to whom the 'auto' is rented").) The problem with such an endorsement, however, is that it nowhere states that it will *not* apply in the event the renter does not have insurance. Stated differently, the CI Policy creates a gap in coverage for vehicles rented to third-parties, but the policy does not state that the gap is closed in the event the renter does not have its own insurance. In such a situation, a party injured in an accident with a 21st Century vehicle that was rented to a third-party and was being used in the course of the third-party's business may not have "recourse to a financially responsible defendant." *Morris,* 84 N.Y.2d at 29, 614 N.Y.S.2d at 365, 637 N.E.2d 253. Thus, on its face, the Non–Trucking Use Endorsement appears to violate New York public policy.

Numerous courts, including a number of federal courts, have had the opportunity to consider whether Non–Trucking Use Endorsements like that in the CI Policy are valid under New York law. With limited exceptions, those courts have found such endorsements invalid, unless the endorsement by its terms *required* the renter to have other insurance in place to cover liabilities. For example, in *Randazzo v. Cunningham,* the owner of a truck leased the truck to a freight company. 56 A.D.2d 702, 392 N.Y.S.2d 740, 740–41 (4th Dep't 1977), *aff'd on opinion below,* 43 N.Y.2d 937, 403 N.Y.S.2d 894, 374 N.E.2d 1245 (1978). The truck was involved in an accident while being operated by the freight company. A dispute then arose between the owner's insurance company and the freight company's insurer. The owner's insurance policy included a provision which stated that the policy did not apply whenever "the automobile is being used in the business of any person or organization to whom the automobile is rented." *Id.* at 702, 392 N.Y.S.2d 740, 392 N.Y.S.2d at 741. Thus, the owner's insurer argued that it could not be required to indemnify the truck owner, because of the policy exclusion. The trial court agreed, and entered judgment for the truck owner.

The Appellate Division reversed, concluding that the exclusion in the truck owner's policy violated New York public policy. The appellate court reasoned that "[t]he exclusionary clause fails to require the existence of other insurance sufficient to meet the minimum standards of coverage established by our financial responsibility laws ...." *Id.* Accordingly, the clause could not be enforced. The court reached this conclusion despite the fact that the freight company, because it was engaged in interstate commerce, was required to have (and did have) insurance coverage in excess of that required by New York law. The problem, according to

---

**6.** The tractor-trailers involved in the accidents are "autos" under the CI Policy.

the Appellate Division, was that the policy did not *require* the lessee to maintain insurance, and therefore it created a potential gap in coverage. *See id.* at 703, 392 N.Y.S.2d at 741. The fact that the lessee actually had adequate insurance did not rectify this problem. *Id.*

The court in *Transport Insurance Co. v. Protective Insurance Co.*, 647 F.Supp. 1381 (N.D.N.Y.1986), confronted the same situation: a truck leased to a freight carrier engaged in interstate commerce was involved in an accident with a passenger car. The lessor's insurer disclaimed coverage, due to an exclusion in its policy which exempted from coverage accidents which occurred "while the automobile is being used in the business of any person or organization to whom the automobile is rented." *Id.* at 1383. The lessee argued that the exclusion was invalid under New York law, relying on *Randazzo*. The lessor, however, insisted that the result in *Randazzo* "contravene[d] the established practice of the insurance industry, which places primary responsibility for liabilities incurred as the result of the negligent operation of a tractor-truck and trailer transporting goods in interstate commerce on the lessee of the tractor." *Id.* at 1384. Because ICC regulations required carriers to maintain insurance in excess of the minimums required under New York law, the lessor argued that the exclusion did not undermine New York public policy, since any accident victim would have recourse to the carrier's insurer. *Id.*

The court rejected this argument, and found the exclusion to be invalid. The Court stated:

> With respect to Vehicle and Traffic Law § 388, the courts have found that a truckmen's endorsement contained in an insurance policy issued to an owner of a tractor will not violate New York's public policy if the exclusionary clause applies only when the tractor is "in the custody of a lessee under a written lease agreement which requires the lessee to provide insurance thereon." *American Home Assurance Co. v. Hartford Insurance Co.*, 74 A.D.2d 224, 226, 427 N.Y.S.2d 26, 28 (1st Dep't 1980). The distinction between the exclusionary clause at issue in *Randazzo*, which was found to violate § 388, and that at issue in *American Home*, which was enforced, was that the latter endorsement by its terms limited itself to leases requiring the lessee to obtain insurance coverage. In *Randazzo*, no such limitation was included in the exclusionary clause at issue. *See Randazzo*, 56 A.D.2d at 702, 392 N.Y.S.2d at 741; *compare American Home*, 74 A.D.2d at 226, 427 N.Y.S.2d at 28. Without this limitation, the exclusion swept too broadly, including within it the rental of the vehicle to an unlicensed and potentially uninsured lessee.

*Id.* at 1385. Other courts have followed this reasoning. *See R.E. Turner, Inc. v. Conn. Indem. Co.*, 925 F.Supp. 139, 146–49 (W.D.N.Y.1996); *Planet Ins. Co. v. Gunther*, 160 Misc.2d 67, 71–75, 608 N.Y.S.2d 763, 767–69 (Sup.Ct., Rockland County 1993).

However, one federal court has declined to follow *Randazzo* and its progeny. In *Connecticut Indemnity Co. v. Varela*, No. 94 CIV 1586, 1995 WL 16800 (S.D.N.Y. Jan. 18, 1995), Judge Keenan of the Southern District refused to hold a Non–Trucking Use Endorsement invalid on public policy grounds. Judge Keenan was persuaded by the fact that the lessee had insurance against which the victim of the accident could collect. The Court noted that "[i]n *Randazzo, Transport*, and *Planet*, there were no other insurance policies available to indemnify the owner of the vehicles. The situation here is different from the situation presented in those cases, where a 'hapless accident victim' would be entirely bereft of insurance

coverage if the ... exclusion were to be upheld." *Id.* at *4, 608 N.Y.S.2d 763.[7] Accordingly, Judge Keenan enforced the exclusion.

CI argues at length that this Court should decline to follow *Randazzo* and its progeny, and instead follow *Varela.* (*See* Pl. Reply at 1–9.) CI suggests that, because coverage is available under Rampart's policy with Rutigliano, there are no public policy concerns implicated in this case, as there were in *R.E. Turner, Randazzo, Transport,* and *Planet Insurance.* Accordingly, CI argues that *Randazzo* and its progeny are distinguishable, and that *Varela* is more directly applicable. (*See id.*)

The Court cannot agree, because the New York Court of Appeals has rejected the very argument advanced by CI. In *Royal Indemnity Co. v. Providence Washington Insurance Co,* a case with facts similar to this one (and those discussed above), New York's highest court addressed the validity of Non–Trucking Use Endorsements for the first time. The *Royal Indemnity* case had an interesting procedural history. The action was first filed in the United States District Court for the Northern District of New York (Scullin, J.). Judge Scullin granted summary judgment in favor of the lessee's insurer, after finding that the Non–Trucking Use Endorsement in the lessor's insurance policy was invalid under New York law. *See* 952 F.Supp. 125, 127–28 (N.D.N.Y.1997). The lessor's insurer appealed Judge Scullin's decision to the Second Circuit. That court certified the following question to the New York Court of Appeals:

> Whether a non-trucking use exclusion from coverage in an insurance policy

obtained by the owner of a commercial vehicle is valid under New York law, despite the absence of express language in the policy stating that the exclusion is effective only if the vehicle's lessee is required to obtain insurance coverage, where the insurer has established that its standard underwriting policy is not to issue a policy containing such an exclusion unless the vehicle owner has provided proof that the vehicle's lessee has insurance coverage.

*See* 92 N.Y.2d 653, 656, 684 N.Y.S.2d 470, 471, 707 N.E.2d 425 (1998). After the New York Court of Appeals answered this question in the negative, the Second Circuit affirmed Judge Scullin's decision.

In answering the certified question in the negative, the Court of Appeals noted that the Non–Trucking Use Endorsement did not "expressly provide that it [was] only operative if the lessee ha[d] business use liability coverage in effect for the accident in question ...." *Id.* at 658, 684 N.Y.S.2d at 472, 707 N.E.2d 425. Thus, the Court recognized that the Non–Trucking Use Endorsement, on its face, created a potential gap in coverage. *See id.* at 657, 684 N.Y.S.2d at 471, 707 N.E.2d 425 ("under Providence's policy, the non-trucking use exclusion created a gap in policy coverage for any loss incurred when the truck was being used in furtherance of [the lessee's] business"). Therefore, the Court found that the Non–Trucking Use Endorsement could not stand. *See id.* at 658, 684 N.Y.S.2d at 472, 707 N.E.2d 425 ("Since Providence's exclusion on its face could apply even if the vehicle had no other insurance, the instant case is not distinguishable from *Randazzo*.").

---

7. It is unclear how Judge Keenan concluded that "no other insurance policies" were available in *Randazzo*. In fact, the *Randazzo* court specifically noted that the lessee had insurance coverage, but held that this fact did not affect the validity of the exclusion. *See* 56 A.D.2d at 703, 392 N.Y.S.2d at 741.

■ The Court rejected the argument—raised here by CI—that the exclusion was valid because the insurer demonstrated that it would not issue an insurance policy until the lessee proved that it had adequate insurance. The Court approvingly cited *Randazzo* for the proposition that the mere fact that the lessee "had truckers liability insurance[ ] does not bring a non-trucking use exclusion in the owner's policy into compliance with New York's statutory requirements if the exclusion would have applied had the lessee not had such insurance." *Id.* at 657–58, 684 N.Y.S.2d 470, 707 N.E.2d 425, 684 N.Y.S.2d at 472, 707 N.E.2d 425. Furthermore, the fact that the lessee may have had insurance at the time the lessor's insurer issued the policy did not guarantee that the lessee would have insurance at some future time when an accident might occur. Thus, the exclusion simply could not apply. *Id.*

For these reasons, this Court finds that the Non–Trucking Use Endorsement in CI's Policy cannot be enforced. Notwithstanding CI's argument to the contrary, the law is clear, under *Royal Indemnity*, that Rampart's insurance policy with Rutigliano is irrelevant; the only relevant question is whether the Non–Trucking Use Endorsement in the CI Policy (or the policy as a whole) "expressly provide[s] that it is only operative if the lessee has business use liability coverage in effect for the accident in question." *Id.* at 658, 684 N.Y.S.2d at 472, 707 N.E.2d 425. Neither the Non–Trucking Use Endorsement, nor the CI Policy as a whole, include such a provision.[8] Accordingly, the Non–Trucking Use Endorsement is invalid, because it is contrary to New York public policy.

■ Recognizing that its arguments run afoul of the Court of Appeals's holding in *Royal Indemnity*, CI argues that *Royal Indemnity* was wrongly decided, and that this Court should decline to apply it. (*See* Pl. Reply at 6–9.) The Court has no authority to do so. The Court's "obligation in this diversity case is to apply New York law as the New York Court of Appeals would apply it." *Goodlett v. Kalishek*, 223

---

8. In its reply brief, CI argues that its policy contains language outside the Non–Trucking Use Endorsement requiring a lessee to have insurance, and thus the Non–Trucking Use Endorsement does not violate New York public policy. (*See* Pl. Reply at 10–15.) The Court rejects this argument for two reasons. First, CI never raised the argument in its cross-motion/opposition to Rampart's motion, and CI cannot raise it for the first time in its reply. *Chase Manhattan Bank, N.A. v. T & N plc*, 905 F.Supp. 107, 122 n. 5 (S.D.N.Y.1995) ("Arguments for summary judgment cannot be raised for the first time in reply briefs."); *Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F.Supp. 667, 677 n. 5 (S.D.N.Y.1995) (same). Second, the language to which CI directs the Court's attention does not address the problem with the Non–Trucking Use Endorsement. The language states that "[i]t is hereby agreed and understood that this policy does not apply with respect to an owned automobile while such automobile is in the custody of a lessee under a written lease agreement which requires the lessee to provide insurance thereon unless insurance is specifically provided by endorsement to this policy." (Pl. Reply at 10.) This provision simply requires a lessor to demonstrate that its lessee has insurance *at the time the policy is issued* to the lessor. As the Court noted in *Royal Indemnity*, however, that is insufficient; while "an initial gap in coverage might be foreclosed" by such a provision, "truckers coverage might not continue to be in effect at some later date when an accident occurs, due, for example, to a cancellation or lapse in the lessee's policy." 92 N.Y.2d at 658, 684 N.Y.S.2d at 472, 707 N.E.2d 425; *see also id.* at 658 n. 2, 684 N.Y.S.2d at 472 n. 2, 707 N.E.2d 425 (criticizing *American Home*'s holding that a non-trucking use exclusion "referring to a contractual obligation of the lessee to obtain [insurance] coverage is valid," because "the obligation would be insufficient to provide coverage if the lessee breached the contract by not having insurance in effect at the time of the accident").

F.3d 32, 36 (2d Cir.2000) (citation omitted). Accordingly, the Court is "not free to develop [its] own notions of what should be required by the public policy of the state, but [is] bound to apply the state law as to these requirements." *Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 80 (2d Cir.1999) (quoting *Cornellier v. Am. Cas. Co.*, 389 F.2d 641, 644 (2d Cir.1968)).

For the foregoing reasons, the Non–Trucking Use Endorsement is invalid under New York law. Accordingly, Rampart's motion for summary judgment on Count IV—which seeks a declaration by CI that CI is not required to indemnify 21st Century, Haynes or Vaz due to the Non–Trucking Use Endorsement in the CI Policy—is granted, and CI's cross-motion is denied.

## IV. *CI is Entitled to Summary Judgment on Count I*

Count I is closely related to Count IV. In Count I, CI seeks a declaration that *Rampart* is required to indemnify 21st Century, Haynes and Vaz, due to the fact that the tractor-trailers were "under dispatch" to Rutigliano at the time of the accidents. Accordingly, CI asserts that 21st Century, Haynes and Vaz are "insureds" under Rampart's policy with Rutigliano. (*See* Am. Compl. ¶¶ 68–71.) Both parties now seek summary judgment

on this claim, and each focuses on whether the tractor-trailers in question were "under dispatch" to Rutigliano at the time of the Williams and Messam Accidents. (*See supra* n. 3.) [9] Rampart argues that, "[i]n the absence of evidence sufficient to establish that either the tractor owned by 21st Century that was operated by Haynes on November 26, 1997[,] or the tractor owned by 21st Century that was operated by Vaz on February 20, 1998[,] was 'under dispatch' to Rutigliano ... Connecticut Indemnity cannot establish that the [Rampart] Policy provides coverage for either incident." (Def. Mem. at 7; *see also* Def. Reply at 11–14.) In response, CI argues that the facts show that the tractor-trailers were "under dispatch" to Rutigliano, and thus the Rampart insurance policy applies. (*See* Pl. Mem. at 4–9, 13–21.)

◼ In support of its argument, CI proffers the affidavits of both Haynes and Vaz. In these affidavits, Haynes and Vaz both affirm that, at the time of the accidents, they were hauling paper loaded by Rutigliano employees, and were driving to locations specified by Rutigliano. (*See* Haynes Aff. ¶¶ 3–4; Vaz Aff. ¶¶ 3–5 (copies of these affidavits are annexed to CI's Notice of Motion as Exs. D & H).) CI also points to three documents—a "dock receipt" and an "invoice," each of which is dated February 20, 1998, and a "trailer

---

**9.** In its reply, Rampart raises another issue with respect to whether CI is entitled to summary judgment on Count I. Rampart argues that "there is considerable doubt whether Rutigliano (or any other party claiming coverage under the [Rampart] Policy) has complied with the conditions precedent to coverage under the ... [p]olicy, including, but not limited to, timely notice of the underlying motor vehicle accidents and the lawsuits arising therefrom." (Def. Reply at 13–14.) This bald assertion, however, is unsupported by any evidence—indeed, Rampart has failed to identify any evidence demonstrating that Rutigliano or any other party failed to comply with the notice require-

ments under Rampart's insurance policy. Therefore, this assertion is insufficient to overcome CI's summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (nonmovant must point to significant probative evidence creating issue of fact over which reasonable minds could disagree). In fact, if Rampart were correct, one would expect that it would have raised this argument in its Memorandum of Law in support of its Motion for Summary Judgment on Count I; Rampart failed to do so, however, and instead only addressed Count I in terms of whether the tractor-trailers were "under dispatch" to Rutigliano.

interchange receipt," dated November 26, 1997—supporting Haynes and Vaz's statements. (*See* Pl. Notice of Cross–Motion, Exs. E–G.) This evidence is sufficient to demonstrate that the tractor-trailers at issue were "under dispatch" to Rutigliano.

■ Rampart argues that CI has merely directed the Court's attention to "three pieces of paper ... that are at best inconclusive." (Def. Mem. at 6–7.) Yet Rampart has failed to offer any evidence contradicting what these three pieces of paper appear to demonstrate: that the tractor-trailers involved in the Williams and Messam Accidents were hauling Rutigliano paper when the accidents occurred. Rampart also argues that CI submitted the affidavits of Haynes and Vaz "at the thirteenth hour," and that it is entitled to depose Haynes and Vaz regarding the assertions in their affidavits. According to Rampart, until it conducts those depositions, "CI cannot succeed on its cross-motion against Rampart as a matter of law." (Def. Reply at 13.) This argument is meritless. Rampart has offered no justification whatsoever for failing to depose Haynes or Vaz previously, and discovery in this case has already closed. Rampart cannot avoid summary judgment

simply because it chose not to depose these two obviously important witnesses prior to the close of discovery. Simply put, Rampart has elected to belittle the evidence submitted by CI, instead of offering any evidence on its own indicating that the tractor-trailers were *not under dispatch* to Rutigliano.[10] This is insufficient—Rampart cannot simply "rest on the mere ... denials of the facts asserted" by CI. *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1066 (2d Cir.1995). In the absence of any evidence to the contrary, CI has satisfied its burden of demonstrating that there is no "genuine issue" regarding whether the tractor-trailers were under dispatch to Rutigliano. Accordingly, because Rampart evidently concedes that 21st Century, Haynes and Vaz are "insureds" under Rampart's policy if the tractor-trailers were under dispatch to Rutigliano (*see supra* n. 3), summary judgment is granted in CI's favor on Count I.[11]

## V. *Rampart is Entitled to Summary Judgment on Count V*

Count V is pled in the alternative of CI's other claims. In Count V, CI seeks a declaration that, in the event the Court

10. Rampart directs the Court's attention to a Lease Agreement dated January 14, 1997, between 21st Century as lessor and "Samuel Seymour—d/b/a Sam's Trucking" as lessee. (*See* Nemecek Aff. Ex. F.) Under the terms of the Lease Agreement, 21st Century leased three tractors to Seymour, including the tractors involved in the Williams and Messam Accidents. In light of this fact, Rampart argues that "genuine issues of material fact exist as to Seymour's involvement in the underlying accidents," and thus summary judgment cannot be granted in CI's favor. (*See* Def. Reply at 13.) But Rampart fails to explain how this Lease Agreement suggests that Seymour was in any way "involved" in the accidents, and further fails to identify how Seymour's involvement, if any, in the accidents would affect Rampart's duty to indem-

nify 21st Century, Haynes or Vaz. Rampart's argument therefore misses the mark.

11. It is not inconsistent for the Court to decide that both CI and Rampart are required to indemnify 21st Century, Haynes and Vaz. "Vehicle and Traffic Law Section 388 imposes joint and several liability on owners of tractors and trailers used in combination with one another, for injuries occasioned by such vehicles." *Mount Vernon Fire Ins. Co. v. Travelers Indem. Co.*, 63 A.D.2d 254, 255–56, 407 N.Y.S.2d 23, 24 (1st Dep't 1978). Indeed, both the CI Policy and the Rampart Policy contain "other insurance" clauses which specifically recognize that more than one insurer may be obligated to indemnify the operator of a covered "auto," with one insurance deemed "primary" and the other deemed "excess."

determines that CI is obligated to indemnify 21st Century, Haynes or Vaz (which it already has), its exposure is limited to the mandatory minimums set by New York's Financial Responsibility Laws, due to the Limitation of Liability Endorsement. (*See* Am. Compl. ¶¶ 88–90.) As noted above, the Limitation of Liability Endorsement states:

> We agree with YOU that if any of the provision of the endorsement, "Truckers Insurance for Non–Trucking Use" ... are held to be void or unenforceable under the law of any jurisdiction, ... WE will not pay any sums in excess of the minimum amounts required by the Financial Responsibility Laws of such jurisdiction, and then only after all valid and collectible insurance available ... has been exhausted.

(*See id.* ¶ 89.)

 Rampart argues that it is entitled to summary judgment on this claim, because the Limitation of Liability Endorsement, like the Non–Trucking Use Endorsement, is contrary to New York public policy, and therefore is invalid. (*See* Def. Mem. at 13–14.) In support of its argument, Rampart cites to *R.E. Turner*, another case involving CI. There, after holding that the Non–Trucking Use Endorsement in CI's insurance policy was invalid, the court analyzed the *exact same* Limitation of Liability Endorsement at issue in this case. *R.E. Turner*, 925 F.Supp. at 141–42. The court held that the Limitation of Liability Endorsement was invalid, reasoning that "[p]ermitting Defendant to limit its liability ... in cases where its policy exclusion is found to be invalid would render the finding on the issue of validity essentially meaningless." *Id.* at 149–50; *see also Planet Ins. Co.*, 160 Misc.2d at 74, 608 N.Y.S.2d at 769. This reasoning is persuasive.

CI, recognizing the obvious negative impact of the *R.E. Turner* decision, argues that *R.E. Turner* should be read in light of the New York Court of Appeals's recent decision in *ELRAC v. Ward*, 96 N.Y.2d 58, 724 N.Y.S.2d 692, 748 N.E.2d 1 (2001), and, when the Court does so, it is clear that the Limitation of Liability Endorsement should be enforced. The Court disagrees. *ELRAC* concerned clauses in car rental agreements which required all renters of ELRAC's cars to indemnify ELRAC for injuries caused to third-parties by use of those cars. The Court of Appeals held that ELRAC could not seek indemnification for amounts below the mandatory minimum insurance requirements it was obligated to carry on each of its cars, but that ELRAC could seek indemnification for amounts in excess of the minimums. *See id.* at 73–74, 724 N.Y.S.2d at 697–98, 748 N.E.2d 1.

*ELRAC*, therefore, had nothing to do with a bargained-for insurance policy. Rather, that case merely concerned a clause in car-rental agreements purporting to limit ELRAC's exposure to the mandatory minimum insurance requirements in the event the renter of an ELRAC car injured a third-party. However, the facts in this case, like the facts in *R.E. Turner*, are different from *ELRAC*, because what is involved here is "an insurance company attempting to limit its liability under an already negotiated and purchased insurance policy where an exclusion is found to be invalid as against public policy." *R.E. Turner*, 925 F.Supp. at 149. *ELRAC* therefore is inapposite.

Furthermore, in reaching its decision in *ELRAC*, the Court of Appeals relied on its earlier decision in *Morris v. Snappy Car Rental*, 84 N.Y.2d 21, 614 N.Y.S.2d 362, 637 N.E.2d 253 (1994). There, the Court held that a car rental company could disclaim liability, via contract, which exceeds the amount for which motor vehicle owners are required to be insured under New

York law, but could not circumvent the minimum insurance requirements by contract. In essence, then, the Court of Appeals in *ELRAC* merely reiterated what it had said in *Morris*, namely, that coverage in excess of New York's mandatory minimum insurance requirements could be contracted away, but coverage up to those requirements could not be. Yet the *R.E. Turner* court distinguished *Morris* from the facts of that case, and the *Royal Indemnity* court favorably cited the *R.E. Turner* court's conclusion regarding the enforceability of the Limitation of Liability Endorsement. The inescapable conclusion, then, is that *ELRAC* had no effect on *R.E. Turner*.

Thus, there is no reason to depart from the decision in *R.E. Turner* regarding the validity of the Limitation of Liability Endorsement. Accordingly, the Court finds that the Limitation of Liability Endorsement is invalid under New York law.

### CONCLUSION

For the foregoing reasons, Rampart's motion for summary judgment is granted in part and denied in part, and CI's cross-motion also is granted in part and denied in part. Rampart's motion is granted with respect to Counts IV and V, and denied with respect to Count I. CI's cross-motion is granted with respect to Count I, and denied with respect to Counts IV and V. In other words, summary judgment is granted in Rampart's favor with respect to CI's claims that (i) CI is not required to indemnify 21st Century, Haynes or Vaz, due to the Non–Trucking Use Endorsement in the CI Policy (Count IV) and (ii) CI's liability under the CI Policy is limited to the state mandatory minimums, due to the Limitation of Liability Endorsement (Count V). Summary judgment is granted in CI's favor with respect to its claim that Rampart is required to indemnify 21st Century, Haynes and Vaz (Count I).

SO ORDERED.