FRANK ANASTASIO, Appellant, *v.* JOB E. HEDGES, as Receiver of NEW YORK RAILWAYS COMPANY, Respondent.

First Department, December 14, 1923.

Street railways — action to recover for injuries suffered by plaintiff when he was struck by street car — accident occurred as plaintiff, foreman of subway construction, was leaving trench below trolley tracks — evidence supports verdict for defendant — reversible error to admit evidence on behalf of defendant that plaintiff's employer was negligent also — error to admit rules of defendant as to speed of cars at point of accident.

In an action to recover damages for injuries suffered by the plaintiff, a foreman of men working on subway construction, a verdict in favor of the defendant is supported by the evidence, where it appears that the plaintiff was struck by

a street car as he was leaving a cut or trench beneath the trolley tracks, and that the evidence was conflicting as to the speed of the car, the attention of the motorman, and signals given to stop the car.

However, it was reversible error for the court to admit evidence which tended to show that the plaintiff's employer was guilty of negligence in not properly protecting the plaintiff against the injury in question, since the negligence of one tort feasor does not excuse the negligence of another whose concurring negligence caused the injury.

It was error also for the court to admit the rules laid down by the defendant for the guidance of its employees as to the speed for operation of cars going over the track at the point of the accident; the existence of rules regulating speed is no proof as to the speed of the car at the time of the accident.

APPEAL by the plaintiff, Frank Anastasio, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 27th day of May, 1922, upon the verdict of a jury, and also from an order entered in said clerk's office on the 6th day of June, 1922, denying the plaintiff's motion for a new trial made upon the minutes.

*LaGuardia, Sapinsky & Amster* [*Simon M. Sapinsky* of counsel], for the appellant.

*Winthrop & Stimson* [*B. H. Ames* of counsel], for the respondent.

McAVOY, J.:

The suit was for damages caused by plaintiff being struck by one of defendant's cars as he was emerging from a trench under the north-bound track of the defendant company which extended beyond the easterly rail of the track. Plaintiff was the foreman of the men working in the trench. He was employed by Booth & Flinn, Ltd., who were engaged in subway construction in Union Square West just north of Fourteenth street in the borough of Manhattan, city of New York. The accident happened on Saturday, March 26, 1921, about eight o'clock in the morning. As the plaintiff was leaving the cut to get some tools he claims to have looked both ways and not to have seen anything coming, and then to have looked again and seen a car approaching. At that time he raised his hands and called out, " Stop, stop," to the motorman. No gong or sound indicating the approach of the car was heard by him before he started to leave the trench. He was unable to bend away from the approaching car, and he fell on his back to avoid it; but the car caught him and crushed him against the side of the embankment of the cut. When he raised his hands and called out to stop, the car was between eight and thirteen feet away; and at that time the motorman was not looking at him at all, but was looking towards the west. The distance from the rail to the easterly side of the embankment was from a foot and

a half to two feet and a half, and when one stood up in the trench, his body would be about two feet above the surface of the roadway.

Plaintiff is corroborated by two witnesses as to his crying out, " Stop, stop," before the car passed, and as to the failure of the motorman to ring any gong. One witness stated that he ran after the car to stop it, and told the motorman that he had run over a man, and the motorman said to him, " Where? " Then he told· the motorman it was back further. This witness also stated that he saw the motorman looking west as he came around the curve from Fourteenth street into Union Square West; and he further gave testimony that at the time of the collision the car was going at a speed of from twenty to twenty-five miles an hour. The motorman said the first thing that drew his attention to the accident was that his power gave way and he heard a yell, and then he put on his brake and stopped and looked around and saw people running; and that he afterwards learned that a man had been crushed there by the bottom of the car, or by the side of the car. The motorman claimed that at the time he was going only four miles an hour; that he rang his bell; that he saw no one and heard no one call out, " Stop, stop; " that so far as he could see everything was clear; and that he was looking straight ahead on the tracks.

The conductor and two passengers testified that they did not actually see this happening, but their attention was drawn to the opening of the doors of the car which shut off the power, and a lot of screaming from the outside and a lot of people running around; that the gong was ringing and the car was traveling slowly, or about four miles an hour, and not fast; and none of these persons heard the cry of, " Stop, stop," prior to the accident.

On this record of the testimony by each side, a jury question was presented only, and the judgment for defendant would be affirmed but for errors of law which were committed, and which seriously prejudiced the proper decision of this fact. The errors which we think affected the finding are two: *First*, that evidence was allowed to be given relating to a flagman employed by Booth & Flinn, Ltd., which described his duties, and what he was supposed to do for the protection of his fellow-employees working in the trench, and what it is alleged he did on the occasion in question; and, *second*, that evidence respecting the rules of the street car company with reference to the speed with which the street cars should approach the curve at which the accident happened and should operate over the tracks at the point of the accident while the Booth & Flinn work was going on, was improperly admitted. The reason for excluding the testimony with respect

to the conduct of Booth & Flinn, Ltd., the employer, is that when an injury is the result of two concurring causes, the party responsible for one of these causes is not exempt from liability because his joint actor in the matter may be concurrently liable. The negligence of one tort feasor does not excuse the negligence of the other. The master's negligence in protecting his servant, even if concurrently the cause of the injury which happens to the servant, does not relieve the third party who is also an active wrongdoer against the servant.

It is claimed that the Booth & Flinn, Ltd., flagman was supposed to whistle to the workmen when a car was approaching, in order to warn them of its approach; and that on the occasion in question this flagman failed to whistle and failed to stop the car from proceeding. While this may have been concurrently the cause of injury to the plaintiff, it was not competent evidence to relieve the defendant from liability if the jury believed that the motorman was operating the car over the cut at a high rate of speed, and failed to give warning of his approach thereto by sounding his gong, and was not looking ahead on the tracks, but was looking in a westerly direction, and failed because of his neglect in observing the condition of the tracks ahead to heed the warning of the plaintiff to stop his car, and in fact, did not know that he had struck the plaintiff until after he had passed over the cut and beyond it, as the plaintiff's witnesses contend; nor does it tend to ·establish the defense which was presented, as against the defendant's claim, that the motorman was approaching at a slow rate of speed, at about four miles an hour; that he was sounding his gong and was looking ahead. Its sole effect in this controversy was to introduce an alien question wholly outside the issue, that is, whether Booth & Flinn, Ltd., properly protected its employees, which was wholly beside the question as to whether, assuming that it did not, the defendant's negligence was a concurring cause of the injury, so as to make it a joint tort feasor. There are many instances of the application of such a rule to the effect that a defendant cannot successfully defend a charge of negligence on the ground that the negligence of another contributed to the injury; but one will suffice to show the tendency of the courts. In *Jerome* v. *New York Railways Co.* (190 App. Div. 311) Mr. Justice LAUGHLIN for this court stated the rule to be: " The question of fact, therefore, with respect to the liability of the defendant was whether or not her injuries were caused or contributed to by any negligence on the part of the defendant, for if they were it is wholly immaterial whether or not there was concurrent negligence on the part of another or others because joint tort feasors are

liable both jointly and severally, and neither, in circumstances such as are here presented, has a right of contribution against the other, and, therefore, one is not entitled to have the others joined."

The doctrine of imputation to one party of the negligence of another is not adhered to in this State, and as early as the decision in the case of *Webster* v. *Hudson River R. R. Co.* (38 N. Y. 260) we find the principle announced: . " The ' imputation ' to the plaintiff of the negligence of another is based upon no sound principle. The fact that the Boston road was also guilty of negligence, furnishes, in law or morals, no excuse for the negligence of the Hudson River Company, and no reason why they should not respond in damages."

It seems to us that the error of admitting this evidence was of substantial prejudice to the plaintiff.

However, besides this admission of proof of the negligence of the joint tort feasor, the court admitted defendant's rules in support of the claim that it was free from negligence, because there was a scheduled or fixed speed for operation of cars going over this work at Fourteenth street bulletined in the offices of the company. There was a conflict here as to the speed of the car. One witness said it was going from twenty to twenty-five miles an hour, and the motorman and conductor stated that it was proceeding about four miles an hour, and other witnesses stated it was going slowly, or not fast. In additional proof, it was sought to bolster this claim of the defendant by an introduction of its rules concerning the maximum speed at which its cars were allowed to go over the work in question, which the rules fixed at four miles an hour. Whether or not the command of the rules was observed by the regulation of the speed of the car at their prescribed limit, if rules there were, was the primary question; and under no authority which is admitted in this State to be sound is a rule admitted in evidence to show that because of its existence it necessarily must have been followed, and through such proof absolve a person from negligence on the theory of his observation of a rule laid down for his guidance.

For these reasons we think the judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., DOWLING, FINCH and MARTIN, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event.