OPINION OF THE COURT
Thomas V. Polizzi, J.
Plaintiff, Sharon Graham, alleges she suffered personal injuries as a result of a motor vehicle accident that occurred at or near the intersection of Linden Boulevard and 195th Street, Queens County, New York, on June 17, 2005. Counsel for plaintiff states that he ascertained the identity of these defendants by obtaining a copy of the New York City Police Department accident report, which shows that Rayon S. Dunkley was the driver, and “Nissan Infiniti, LT” (NILT, Inc.) was the registered owner of the vehicle. Defendant NILT, Inc. submits an affidavit of Warren York, manager of the regional collections department, who admits that “NILT was the lessor of the vehicle” at the time of the accident.
Plaintiff commenced her action by filing a summons and verified complaint on March 16, 2006, pursuant to CPLR 304. Service of process was thereafter made upon Rayon S. Dunkley in the manner prescribed by Vehicle and Traffic Law § 253. Ser *792 vice of process was made upon NILT, Inc. in the manner prescribed by Business Corporation Law § 306.*
Defendant, NILT, Inc., makes a preanswer motion for dismissal of plaintiffs tort action and all cross claims on the ground that plaintiff fails to state a cause of action (CPLR 3211 [a] [7]) because article VI (2) of the United States Constitution (the Supremacy Clause) and the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (Transportation Equity Act of 2005) (49 USC § 30106), signed into law by the President on August 10, 2005, expressly preempt Vehicle and Traffic Law § 388, which imposes vicarious liability upon owners of motor vehicles for negligent acts of permissive users of vehicles.
The Transportation Equity Act of 2005
The Transportation Equity Act of 2005 (49 USC § 30106) provides in pertinent part:
“§ 30106. Rented or leased motor vehicle safety and responsibility.
“(a) In general. — An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—
“(1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
“(2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner) . . .
“(c) Applicability and effective date. — Notwithstanding any other provision of law, this section shall apply with respect to any action commenced on or after the date of enactment of this section without regard to whether the harm that is the subject of the action, or the conduct that caused the harm, oc *793 curred before such date of enactment.”
By its express language, the Transportation Equity Act of 2005 (49 USC § 30106) intends to preempt all state statutes to the extent they hold those owners in the business of renting or leasing motor vehicles vicariously liable for the negligence of drivers, except when there is negligence or criminal wrongdoing on the part of the owner. To date, there have been four published cases by state courts, and one federal district court decision, which have discussed the ramifications of 49 USC § 30106 on actions brought by plaintiffs against rental companies:
1. In Davis v Ilama (2006 WL 1148702, 2006 Conn Super LEXIS 1087 [Mar. 14, 2006]), the Superior Court of Connecticut, District of Waterbury, held that 49 USC § 30106 preempted the State’s vicarious liability statute, Connecticut General Statutes § 14-154a, which provided that the owner of a rented motor vehicle is liable for injuries caused by the operation of the vehicle as if the owner was the operator. The court recognized a Connecticut Appellate Court decision which stated that “Section 14-154a imposes a vicarious liability unknown at common law” (Davis v Ilama, 2006 WL 1148702, *4 n 5, 2006 Conn Super LEXIS 1087, *13 n 5, quoting Hughes v National Car Rental Sys., Inc., 22 Conn App 586, 588, 577 A2d 1132, 1134 [1990]).
2. In Infante v U-Haul Co. of Fla. (11 Misc 3d 529 [2006]), the New York State Supreme Court, Queens County, stated that 49 USC § 30106 “resolved a long-standing debate as to the propriety of imposing vicarious liability on car owners who rent or lease their vehicles . . . Congress has prohibited vicarious liability against these owners and preempted the laws in states, such as New York, that previously permitted it” (11 Misc 3d at 530).
3. In Murphy v Pontillo (12 Misc 3d 1146, 1147 [2006]), the New York State Supreme Court, Nassau County, recognized that an action against a rental company “based solely on vicarious liability is barred”; however, it failed to dismiss the complaint because there was insufficient evidence as to whether defendant was in the business of vehicle leasing or renting (id. at 1147-1148).
4. The New York State Appellate Division, Second Department, in King v Car Rentals, Inc. (29 AD3d 205 [2006]) refers to the statute in dicta in a footnote, by stating “[t]he limitations on such liability imposed by 49 USC § 30106 are not applicable here since the ‘harm that is the subject of the action’ *794 occurred before August 10, 2005” (id. at 207 n 1 [emphasis added]). As the statute is written, however, it applies “to any action commenced on or after the date of enactment of this section without regard to whether the harm that is the subject of the action, or the conduct that caused the harm, occurred before such date of enactment” (49 USC § 30106 [c] [emphasis added]).
5. In a federal district court case, Piche v Nugent (2005 WL 2428156, 2005 US Dist LEXIS 22275 [Sept. 30, 2005]), the United States District Court for the District of Maine recognized that 49 USC § 30106 preempted state statutes that impose vicarious liability, but it did not apply the statute because the cause of action was commenced prior to the effective date of the statute.
Vehicle and Traffic Law § 388
Vehicle and Traffic Law § 388 states, in relevant part:
“§ 388. Negligence in use or operation of vehicle attributable to owner.
“1. Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.”
Thus, Vehicle and Traffic Law § 388 imputes to all motor vehicle owners the negligence of those who operate the vehicle with the owner’s permission. This altered the general common-law rule that an owner was not responsible for the negligent acts of a driver who was using a vehicle for his or her own business or pleasure (Murdza v Zimmerman, 99 NY2d 375, 379 [2003]; Morris v Snappy Car Rental, 84 NY2d 21, 27 [1994]; Naso v Lafata, 4 NY2d 585 [1958]); however, it did not change the common-law rule that an owner can be held liable for the driver’s negligent operation under other theories of imputed liability, such as employer/employee, principal/agent, and negligent entrustment (see e.g. Murdza v Zimmerman, supra; Morris v Snappy Car Rental, supra at 28; Plath v Justus, 28 NY2d 16, 20 [1971]; Irwin v Klein, 271 NY 477, 482-484 [1936]; Bennett v Geblein, 71 AD2d 96 [1979]). The Court of Appeals has recognized that Vehicle and Traffic Law § 388 is a statute in derogation of the common law, and it changed the common law “only to the extent required by the clear import of the statutory language” (see *795 Morris v Snappy Car Rental, supra at 28). The purposes of the statute are to ensure injured plaintiffs that there will be a financially responsible party to provide compensation for negligent driving (see Hassan v Montuori, 99 NY2d 348 [2003]; Morris v Snappy Car Rental, supra; Plath v Justus, supra; see also Connecticut Indem. Co. v 21st Century Transp. Co., Inc., 186 F Supp 2d 264 [2002]; Caldararo v Au, 570 F Supp 39 [1983]; White v Smith, 398 F Supp 130 [1975]), and to ensure that owners of vehicles that are subject to the law in New York act responsibly with regard to those vehicles (see Fried v Seippel, 80 NY2d 32, 41 [1992]). In fact, the New York State Legislature and the courts of this State have recognized that this State has a “grave concern” in affording recompense to innocent victims of motor vehicle accidents for the financial loss inflicted upon them (Vehicle and Traffic Law § 310 [2]; Tooker v Lopez, 24 NY2d 569, 576-577 [1969]; King v Car Rentals, Inc., 29 AD3d 205 [2006]). This has been the policy of the State of New York since the Legislature enacted Highway Law § 282-e in 1924, the predecessor to Vehicle and Traffic Law § 388 (see Tikhonova v Ford Motor Co., 4 NY3d 621, 624 [2005]). Also of historical significance is that it was only a few years earlier, in 1916, that the Court of Appeals recognized motor vehicles to be dangerous instruments, saying their “nature gives warning of the consequences to be expected,” and defined the duty of the manufacturer in MacPherson v Buick Motor Co. (217 NY 382, 389 [1916]). Proposed legislation in the New York State Senate (2005 NY Senate Bill S 4192) and the New York State Assembly (2005 NY Assembly Bill A 10592) that would amend Vehicle and Traffic Law § 388 to limit a lessor’s liability has not been reconciled by the two houses and passed into law.
In 1933, New York State’s vicarious liability statute survived a constitutional challenge in the United States Supreme Court in Young v Masci (289 US 253 [1933]). In that decision, Justice Brandéis wrote:
“The power of the State to protect itself and its inhabitants is not limited by the scope of the doctrine of principal and agent. The inadequacy of that doctrine to cope with the menacing problem of practical responsibility for motor accidents has been widely felt in cases where the injurious consequences are the immediate result of an intervening negligent act of another . . . Many courts have extended responsibility, without the aid of legislation, by imposing liability upon the owner ... In some States, including New York, the problem was *796 left to the legislature ... Its statute makes mere permission to use the car the basis of liability . . . No good reason is suggested why, where there is permission to take the automobile into a State for use upon its highways, personal liability should not be imposed upon the owner in case of injury inflicted there by the driver’s negligence, regardless of the fact that the owner is a citizen and resident of another State” (id. at 259-260).
United States Constitution Article VI (2) (the Supremacy Clause)
Article VI of the United States Constitution provides that the laws of the United States “shall be the supreme Law of the Land . . . , any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.” (US Const art VI [2].) Pursuant to the Supremacy Clause, state law may be preempted in three circumstances: first, through express statutory language; second, where federal law has so thoroughly occupied a legislative field as to make a reasonable inference that there is no room for the state to supplement it; and third, where a state law conflicts with a federal law (see New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co., 514 US 645 [1995]; English v General Elec. Co., 496 US 72 [1990]; Balbuena v IDR Realty LLC, 6 NY3d 338 [2006]; Feldman v CSX Transp., Inc., 31 AD3d 698 [2d Dept 2006]). There is a strong presumption against preemption, particularly with regard to laws that affect the states’ historic police powers over the health, safety and welfare of their residents (see e.g. Pharmaceutical Research & Mfrs. of America v Walsh, 538 US 644, 666 [2003]; Cipollone v Liggett Group, Inc., 505 US 504, 518 [1992]; Hillsborough County v Automated Medical Laboratories, Inc., 471 US 707, 715 [1985]; De Canas v Bica, 424 US 351, 356-357 [1976]). Although the text of the Supremacy Clause and established precedent make explicit the charge for judicial enforcement where Congress has preempted state law by express terms, this court must consider if it has jurisdiction to examine whether the powers reserved to New York State, pursuant to the Tenth Amendment of the United States Constitution, include New York State’s ability to legislate the scope of vicarious liability within the particular jurisprudence of civil tort law, free from arrogation by the federal government.
Jurisdiction of the New York State Supreme Court
The New York State Supreme Court is a court of original jurisdiction (NY Const, art VI, § 7; see Kagen v Kagen, 21 NY2d *797 532 [1968]). The jurisdiction of this court is set forth in Judiciary Law § 140-b, which states:
“§ 140-b. General jurisdiction of supreme court.
“The general jurisdiction in law and equity which the supreme court possesses under the provisions of the constitution includes all the jurisdiction which was possessed and exercised by the supreme court of the colony of New York at any time, and by the court of chancery in England on the fourth day of July, seventeen hundred seventy-six, with the exceptions, additions and limitations created and imposed by the constitution and laws of the state.”
There are two exceptions to this court’s broad general jurisdiction: cases where exclusive jurisdiction is conferred by Congress on the federal courts by virtue of the Supremacy Clause, and actions against the State of New York where the New York State Legislature has conferred jurisdiction on the Court of Claims (see Siegel, NY Prac § 12, at 16 [4th ed]). Defendant NILT, Inc. argues in this case that “49 USC § 30106 both expressly and impliedly has preempted [Vehicle and Traffic Law] § 388, and has eradicated the concept of vicarious liability for lessors of motor vehicles or their affiliates in New York,” and the Supremacy Clause permits Congress to preempt New York State law. The case law concerning 49 USC § 30106 has heretofore looked no further than the Supremacy Clause in its analysis, and has not addressed the issue whether a court of original jurisdiction may inquire whether Congress has legislated within the scope of powers traditionally reserved to New York State by the United States Constitution, and by doing so has expropriated any part of New York State’s authority to legislate the same subject matter.
“It has been historically accepted that state courts have concurrent jurisdiction on federal constitutional questions unless expressly precluded by Congress” (3 Antieau and Rich, Modern Constitutional Law § 50.01, at 702 [2d ed 1997], citing Houston v Moore, 5 Wheat [18 US] 1 [1820]). The United States Supreme Court recognized as early as 1884 that:
“[A] State court of original jurisdiction . . . may, consistently with existing Federal legislation, determine cases at law or in equity, arising under the Constitution or laws of the United States, or involving rights dependent upon such Constitution or laws. Upon the State courts, equally with the courts of the Union, rests the obligation to guard, *798 enforce, and protect every right granted or secured by the Constitution of the United States and the laws made in pursuance thereof, whenever those rights are involved in any suit or proceeding before them” (Robb v Connolly, 111 US 624, 637 [1884]; see Smith v O’Grady, 312 US 329 [1941]; see also 3 Antieau and Rich, Modern Constitutional Law § 50.01, at 703 [2d ed 1997]).
Thus, Congress has withdrawn from the state courts the power to pass upon the constitutionality of certain congressional acts, such as acts concerning offenses against the laws of the United States (18 USC § 3231). Congress has legislated that federal courts shall have exclusive jurisdiction over such matters as bankruptcy cases (28 USC § 1334) and patent and copyright infringement suits (28 USC § 1338 [a]). In 1943, the United States Supreme Court sustained an act of Congress denying to the state and federal courts other than the Emergency Court of Appeals power to pass upon the validity of price control regulations (Lockerty v Phillips, 319 US 182 [1943]). There is no federal legislation that has specifically withdrawn the power of this court to pass upon the constitutionality of 49 USC § 30106.
In addition, the power to pass on the constitutionality of 49 USC § 30106 is not exclusively within the federal question jurisdiction of the federal district courts (28 USC § 1331). The statute provides that “[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States” (id.). A case arises under a federal law, for purposes of this statute, if a right or immunity created by the laws of the United States is an essential element of plaintiffs cause of action (see Board of Trustees of Painesville Twp. v City of Painesville, Ohio, 200 F3d 396 [6th Cir 1999]; Brotherhood of R.R. Trainmen v New York Cent. R.R. Co., 246 F2d 114 [6th Cir 1957], cert denied 355 US 877 [1957]; Downing v Howard, 162 F2d 654 [3d Cir 1947], cert denied 332 US 818 [1947]). The mere fact that a law of the United States is incidentally or collaterally involved in the action is insufficient to confer jurisdiction (see Howard v Furst, 238 F2d 790 [2d Cir 1956], cert denied 353 US 937 [1957]; Mudd v Teague, 220 F2d 162 [8th Cir 1955]). Thus, a declaratory judgment action brought in federal court seeking a declaration of federal preemption of a state statute does not come within the federal question jurisdiction of the federal courts because such action merely raises federal defenses to a state cause of action (see e.g. Nashoba Communications Ltd. Partnership No. 7 v Town of *799 Danvers, 893 F2d 435 [1st Cir 1990]; Colonial Penn Group, Inc. v Colonial Deposit Co., 834 F2d 229 [1st Cir 1987]). In this case, 49 USC § 30106 does not confer a right or immunity that is essential to plaintiffs cause of action.
In evaluating the applicability of 49 USC § 30106 and article VI of the United States Constitution to the facts of this case, the obligation of the New York State Supreme Court to enforce rights guaranteed to New York residents by the United States Constitution has not been discharged by the power of Congress or the federal courts. The New York State Supreme Court remains, as before, fully capable of determining issues arising under the United States Constitution. To the extent that this court shall endeavor to construe the United States Constitution and the statute, 49 USC § 30106, it shares with the federal courts the obligation to follow authoritative federal construction of the United States Constitution as the supreme law of the land (see People v P.J. Video, 68 NY2d 296 [1986], cert denied 479 US 1091 [1987]).
United States Constitution Amendment X
The Tenth Amendment provides that “[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people” (US Const Amend X). This court shall therefore endeavor to determine whether the Transportation Equity Act of 2005 (49 USC § 30106) was enacted within the powers delegated to Congress by the Constitution, or whether it intrudes on powers reserved to New York State. In doing so, this court is mindful that if the power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to New York State; but if a power is an attribute of New York State sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress (see United States v Oregon, 366 US 643, 649 [1961]; Case v Bowles, 327 US 92, 102 [1946]). The Tenth Amendment is thus “a truism that all is retained which has not been surrendered” (United States v Darby, 312 US 100, 124 [1941]).
United States Constitution, Article I, § 8 (3) (the Commerce Clause)
The court next turns to the singular issue of whether 49 USC § 30106 falls within Congress’ power under article I, § 8 (3) of the United States Constitution (the Commerce Clause). The *800 Commerce Clause of the United States Constitution grants to Congress the power “[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes” (US Const, art I, § 8 [3]).
The United States Supreme Court’s interpretation of the Commerce Clause has changed over the years. Prior to 1937, the power of Congress to legislate pursuant to the Commerce Clause was limited by precedent, for instance, A. L. A. Schechter Poultry Corp. v United States (295 US 495 [1935]), which blocked implementation of the National Industrial Recovery Act’s labor rules for the New York poultry market, inasmuch as they affected interstate commerce only indirectly (id. at 546). However, in 1937, the United States Supreme Court upheld the National Labor Relations Act against a Commerce Clause challenge in NLRB v Jones & Laughlin Steel Corp. (301 US 1 [1937]). In that case it held that intrastate activities that “have such a close and substantial relation to interstate commerce that their control is essential or appropriate to protect that commerce from burdens and obstructions” are within Congress’ legislative powers (id. at 37). In 1941, the United States Supreme Court upheld the Fair Labor Standards Act, which made it unlawful for employers to violate the wage and hour requirements with respect to employees engaged in the production of goods for interstate commerce (United States v Darby, 312 US 100 [1941]), and it extended the power of Congress to regulate intrastate activities “which so affect interstate commerce or the exercise of the power of Congress over it as to make regulation of them appropriate means to the attainment of a legitimate end” (id. at 118).
In United States v Lopez (514 US 549 [1995]), the United States Supreme Court considered the constitutionality of the Gun-Free School Zones Act of 1990, which made it a federal offense “for any individual knowingly to possess a firearm ... at a place the individual knows, or has reasonable cause to believe, is a school zone” (18 USC § 922 [q] [2] [A]). Among the arguments made by the Government in that case is that crime affected the functioning of the national economy, and through the mechanism of insurance, those costs are spread throughout the population (United States v Lopez, 514 US at 563-564; see also United States v Morrison, 529 US 598, 613 [2000]). This argument was firmly rejected by the Court, and Chief Justice Rehnquist stated that “if we were to accept the Government’s arguments, we are hard pressed to posit any activity by an individual *801 that Congress is without power to regulate” (United States v Lopez, 514 US at 564).
In United States v Morrison (529 US 598 [2000]), the United States Supreme Court held that Congress exceeded its authority under the Commerce Clause in enacting the Violence Against Women Act of 1994 (42 USC § 13981), which created a federal civil remedy allowing compensatory and punitive damages, and injunctive and declaratory relief against a person who commits a crime of violence motivated by gender (United States v Morrison, 529 US at 607-627). The statute was supported by numerous congressional findings of the serious impact and substantial effect of gender-motivated violence on interstate commerce, including the finding that it diminished national productivity, increased medical and other costs, and decreased the supply of and demand for interstate products (id. at 615). The Court rejected the congressional findings that gender-motivated violence substantially affects interstate commerce by stating that “[t]he reasoning that petitioners advance seeks to follow the but-for causal chain from initial occurrence to violent crime ... to every attenuated effect upon interstate commerce” {id.). If such reasoning were accepted, Congress might equally regulate family law and other areas of traditional state regulation “since the aggregate effect of marriage, divorce, and child-rearing on the national economy is undoubtedly significant” (id. at 615-616).
In the case of Gonzales v Raich (545 US 1 [2005]), the United States Supreme Court held that the Commerce Clause authority granted to Congress included the power to enact the Controlled Substances Act of 1970 (21 USC § 801 et seq.), which criminalized the manufacture, distribution or possession of marijuana by intrastate growers, and prohibited the local cultivation and use of marijuana for medical purposes by individuals pursuant to the State of California’s Compassionate Use Act of 1996 (Cal Health & Safety Code § 11362.5). The facts of Gonzales are highly distinguishable because it dealt with a controlled substance, marijuana, for which there was a national market in both supply and demand. The Gonzales case was also based squarely on the precedent of Wickard v Filburn (317 US 111 [1942]), which held that the Commerce Clause granted to Congress the power to regulate the production of wheat intended wholly for the farmer’s own consumption, and thus regulate a purely “intrastate” activity that is not itself “commercial,” because failure to regulate this activity would *802 undercut the regulation of the interstate market for that commodity (id. at 124-133). The Court in Gonzales held that there was a rational basis for Congress to conclude that leaving home-consumed marijuana outside federal control would affect price and market conditions, and undercut the comprehensive regulatory scheme of controlling the supply and demand of controlled substances (Gonzales v Raich, supra).
Presently, the United States Supreme Court has identified three categories of activity that Congress may regulate under its commerce power (United States v Lopez, 514 US 549, 558 [1995]). “First, Congress may regulate the use of the channels of interstate commerce,” “[s]econd, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities,” and third, “Congress’ commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, . . . i.e., those activities that substantially affect interstate commerce” (id. at 558-559; see Hodel v Virginia Surface Mining & Reclamation Assn., Inc., 452 US 264 [1981]; Perez v United States, 402 US 146 [1971]). In measuring the scope of the Commerce Clause under these categories, the following guiding principles of recent Commerce Clause jurisprudence apply: (1) Congress can regulate all activities, including intrastate activities, which have a “substantial effect” on interstate commerce (see United States v Darby, 312 US 100, 119 [1941]), (2) the effects on commerce that seem individually trivial may appropriately be deemed “substantial” when considered together with the activity of other similarly situated individuals (see Gonzales v Raich, 545 US 1 [2005]; Wickard v Filburn, 317 US 111 [1942]), and (3) courts should defer to a congressional finding that a regulated activity affects interstate commerce if there is any “rational basis” for such a finding (Gonzales v Raich, 545 US 1 [2005]; United States v Lopez, 514 US 549, 557 [1995]; Hodel v Virginia Surface Mining & Reclamation Assn., Inc., 452 US 264, 276 [1981]).
Discussion
The substantive law of torts has traditionally been part of the common law of the states, and the federal courts have looked to the states for the substantive law of torts since Erie R. Co. v Tompkins (304 US 64 [1938]), wherein the United States Supreme Court recognized that “Congress has no power to declare substantive rules of common law applicable in a state *803 whether they be local in their nature or ‘general,’ be they commercial law or a part of the law of torts” (id. at 78). The tort doctrine of imputed liability, or vicarious liability, has been long settled in New York in areas such as principal and agent, master and servant, and joint venture of enterprise (see Haverstick v Hansen & Sons, Inc., 277 NY 158 [1938]; Webster v Hudson Riv. R.R. Co., 38 NY 260 [1868]; Griswold v Haven, 25 NY 595 [1862]; Anastasio v Hedges, 207 App Div 406 [1923]; Strickland v State of New York, 13 Misc 2d 425 [1958]). Vehicle and Traffic Law § 388 is a state statute in derogation of the state common law (see Morris v Snappy Car Rental, 84 NY2d 21, 28 [1994]), and it is part of New York State’s substantive law of torts. As evidence of the federal courts’ recognition of this, the United States Court of Appeals for the Second Circuit recently certified questions to the New York State Court of Appeals about Vehicle and Traffic Law § 388 in Country-Wide Ins. Co. v National R.R. Passenger Corp. (6 NY3d 172 [2006]). The questions concerned, inter alia, the sufficiency of evidence in establishing whether a vehicle is operated with “permission, express or implied,” as defined by the statute. Also, in Murdza v D.L. Peterson Trust (292 F3d 328 [2002]), the United States Court of Appeals for the Second Circuit certified the following question to the New York State Court of Appeals about Vehicle and Traffic Law § 388: “Did the lessee . . . effectively rebut the presumption of consent of the owner, so as to make it immune as a matter of law from imposition of owner’s liability under Section 388 . . . ?” (Murdza at 333.) In Argentina v Emery World Wide Delivery Corp. (93 NY2d 554 [1999]), the United States Court of Appeals for the Second Circuit certified questions to the New York State Court of Appeals about Vehicle and Traffic Law § 388, and the questions concerned, inter alia, the meaning of the words “use or operation” in the statute, and “[w]hether . . . the vehicle must be the proximate cause of the injury before the vehicle’s owner may be held vicariously liable” (Argentina at 557-558). Thus, it is evident that Vehicle and Traffic Law § 388 is recognized as integral to New York State’s substantive law of torts. The expansion of the definition of vicarious liability by the New York State Legislature in 1924 was a lawful exercise of the Legislature’s inalienable power over the substantive law of civil tort actions (see Young v Masci, 289 US 253 [1933]), and a lawful exercise of its inherent police power, which allows the states great latitude in protecting the general public welfare, including the protection of life and limb *804 and the economic welfare of the people generally (see e.g. Gonzales v Oregon, 546 US 243, — [2006]; Medtronic, Inc. v Lohr, 518 US 470, 475 [1996]; Metropolitan Life Ins. Co. v Massachusetts, 471 US 724, 756 [1985]).
Congress has been required to operate in the framework of a federalist system, with a healthy balance between the states and the federal government, and with the check on its power by the United States Supreme Court’s withholding from it, in necessary cases, the plenary police power that would authorize enactment of every type of legislation, since Marbury v Madison (1 Cranch [5 US] 137, 177 [1803, Marshall, C.J.]). As observed by Justice Kennedy in United States v Lopez (514 US 549 [1995]), although “on the surface the idea may seem counterintuitive, it was the insight of the Framers that freedom was enhanced by the creation of two governments, not one.” (Id. at 576 [Kennedy, J., concurring].) “In the tension between federal and state power lies the promise of liberty” (Id., quoting Gregory v Ashcroft, 501 US 452, 459 [1991]; New York v United States, 505 US 144, 181 [1992]). As recognized by the now-retired Justice O’Connor in dissent in Gonzales v Raich (545 US 1, 57 [2005], quoting Madison, Federalist No. 45, at 292-293 [C. Rossiter ed 1961]),
“We would do well to recall how James Madison, the father of the Constitution, described our system of joint sovereignty to the people of New York: ‘The powers delegated by the proposed constitution to the federal government are few and defined. Those which are to remain in the State governments are numerous and indefinite .... The powers reserved to the several States will extend to all the objects which, in the ordinary course of affairs, concern the lives, liberties, and properties of the people, and the internal order, improvement, and prosperity of the State.’ ”
A state court of original jurisdiction bears the responsibility of protecting the civil liberty of citizens to seek recompense from torts inflicted on them, and to apply the substantive law of torts as defined by common law, precedent and state statute. This state court recognizes that Congress must heed the warning issued to it by the United States Supreme Court in NLRB v Jones & Laughlin Steel Corp. (301 US 1 [1937]) that the interstate commerce power
“must be considered in the light of our dual system of government and may not be extended so as to *805 embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government” (id. at 37).
Vehicle and Traffic Law § 388 is a statute that defines the scope of vicarious liability as part of the substantive law of torts, and it has nothing to do with “commerce.” An individual’s pursuit of justice in the New York State Supreme Court is not an “economic class of activity” or an “economic enterprise,” no matter how broadly those terms may be defined. The statute compels vehicle owners to act responsibly while providing financial accountability to innocent victims of motor vehicle accidents. This court cannot conclude that Vehicle and Traffic Law § 388 has a substantial effect on interstate commerce or that there is a rational basis for 49 USC § 30106. To find that a rational basis for 49 USC § 30106 exists by reasoning that the insurance industry and the car rental industry are required to compensate individuals injured by cars they have put on roads in New York subverts the inherent authority of the New York State Legislature to legislate according to the collective will of its citizens, and it abrogates a long-standing substantive law of torts in New York State. Moreover, this is the sort of reasoning which was expressly rejected in United States v Lopez (514 US 549 [1995]) and United States v Morrison (529 US 598 [2000]). To find that Vehicle and Traffic Law § 388 has a substantial effect on interstate commerce, or that there is a rational basis for 49 USC § 30106, would require this court to “pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States” (United States v Lopez, 514 US 549, 567 [1995]). Although this court is fully cognizant of the expanding congressional license under the Commerce Clause in this past century, this court takes regard of Justice Kennedy’s observation that “the Court as an institution and the legal system as a whole have an immense stake in the stability of our Commerce Clause jurisprudence as it has evolved to this point” (id. at 574). The states have been exercising their judgment in the area of civil tort law by claim of right of history and expertise, and 49 USC § 30106 expropriates a substantive area of New York State’s civil tort law which is beyond the realm of commerce in the ordinary and usual sense of the word. This court cannot conclude that Vehicle and Traffic Law § 388 *806 has a “substantial effect” on interstate commerce unless it agrees with the proposition that every civil lawsuit that results in a monetary judgment, and involves an insured, has a substantial effect on interstate commerce. An analysis and conclusion such as this threatens to sweep all other substantive laws of torts into federal regulatory reach, and create a federal police power over this jurisprudence (see Gonzales v Raich, 545 US 1, 42 [2005, O’Connor, J., dissenting]). Vehicle and Traffic Law § 388 does not concern a commodity or instrumentality of interstate commerce, such as in Gonzales v Raich (545 US 1 [2005]) or Wickard v Filburn (317 US 111 [1942]), but, rather, it is simply a statute in derogation of common law which codifies one aspect of New York State’s substantive tort doctrine of imputed liability: vicarious liability attributable to motor vehicle owners.
This court holds that Vehicle and Traffic Law § 388 is a legislative act within the New York State Legislature’s inherent authority pursuant to the United States Constitution Tenth Amendment, and that 49 USC § 30106 is an unconstitutional exercise of congressional authority under the Commerce Clause (US Const, art I, § 8 [3]). The issue of supremacy of congressional legislation over New York State law is not one to be simply assumed, for Congress has only those powers to legislate that are conferred on it by the United States Constitution. The substantive law of torts is not to be faintly acquiesced to legislation by Congress, particularly when there is no preponderance of constitutional authority to support such a conclusion. While the court’s decision is strictly limited to the facts of this case, this court cannot wholly exempt a corporate class of tortfeasor from liability to otherwise innocent men, women and children, who seek recompense in the courts of the State of New York when they become sick, seriously injured, permanently maimed or even killed, directly as a result of a dangerous instrumentality owned by that corporate class of tortfeasor who is doing business in the State of New York and subject to the laws of the State of New York, unless otherwise directed by the New York State Legislature.
The motion by defendant, NILT, Inc., to dismiss plaintiff’s cause of action for failure to state a cause of action (CPLR 3211 [a] [7]) is denied. That branch of the motion for sanctions, costs, fees and expenses (22 NYCRR 130-1.1, 130-1.2; CPLR 8106, 8202) is denied.

 This action could have been brought in a federal district court pursuant to its diversity jurisdiction (28 USC § 1332), but plaintiff elected to proceed in the New York State Supreme Court.